SLR:LDM
F.# 2020V00924

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

        Plaintiff,            Civil Action No. 20-CV-4442

  - against -

TWO HUNDRED AND EIGHTY THOUSAND DOLLARS AND ZERO CENTS ($280,000.00), MORE OR LESS, IN UNITED STATES CURRENCY, AND MONEY ORDERS IN THE AMOUNT OF FORTY-SIX THOUSAND FOUR HUNDRED DOLLARS AND ZERO CENTS ($46,400.00), MORE OR LESS, SEIZED FROM LIYUAN SHENG AT JOHN F. KENNEDY AIRPORT ON OR ABOUT MAY 13, 2020, AND ALL PROCEEDS TRACEABLE THERETO,

        Defendant in rem.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiff, United States of America, by its attorney, SETH D. DuCHARME, Acting United States Attorney for the Eastern District of New York, LAURA D. MANTELL, Assistant United States Attorney, of counsel, for its complaint alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. This is a civil action in rem to forfeit and condemn to the use and benefit of the United States the following funds in the total amount of three hundred and twenty-six thousand, four hundred dollars and zero cents ($326,400.00), and all proceeds traceable thereto (collectively the "Defendant Funds"), which were seized on or about May

13, 2020, from Liyuan Sheng ("Sheng") at John F. Kennedy International Airport ("JFK") in Jamaica, Queens, New York.  The Defendant Funds are comprised of: (a) two hundred and eighty thousand dollars and zero cents ($280,000.00) in U.S. Currency (the "Defendant Cash"); and (b) forty-eight assorted blank money orders (the "Defendant Money Orders") with a combined value of forty-six thousand, four hundred dollars and zero cents ($46,400.00).

    2.  As set forth herein, the Defendant Funds are subject to forfeiture pursuant to: (a) 21 U.S.C. § 881(a)(6), as moneys furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate violations of the Controlled Substances Act, 21 U.S.C. §§ 841 et seq. (the "CSA"); (b) 18 U.S.C. § 981(a)(1)(A), as property involved in one or more transactions or attempted transactions in violation of 18 U.S.C. § 1956; and/or (c) 31 U.S.C. § 5317, as property involved in violations of 31 U.S.C. § 5324.

## JURISDICTION AND VENUE

    3.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1345 and 1355.

    4.  Venue is proper pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) in that the acts and omissions giving rise to the forfeiture occurred in the Eastern District of New York.

## RELEVANT STATUTORY AND REGULATORY PROVISIONS

    5.  Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in

exchange for a controlled substance or listed chemical in violation of the CSA, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate such a violation, are subject to forfeiture to the United States.

6. Pursuant to 18 U.S.C. § 1956(a)(1)(B)(i), it is unlawful to conduct or attempt to conduct a financial transaction designed in whole or in part to conceal or disguise the source, ownership, or control of the proceeds of specified unlawful activity. Pursuant to 18 U.S.C. § 1956(c)(7)(B)(iv), which incorporates by reference 18 U.S.C. § 1961(1), the term "specified unlawful activity" includes dealing in a controlled substance or listed chemical (as defined in section 102 of the CSA), punishable by imprisonment for more than one year.

7. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a money laundering transaction or attempted money laundering transaction in violation of 18 U.S.C. § 1956, or any property traceable to such property, is subject to civil forfeiture.

8. Pursuant to 31 U.S.C. § 5325(a) and 31 C.F.R. § 1010.415, any financial institution, which is defined to include the United States Postal Service and other issuers of money orders, that issues money orders in excess of $3,000 must obtain certain identifying information from the purchaser and record such information. Such transactions are subject to reporting to the Secretary of the Department of the Treasury upon request of the Secretary. 31 U.S.C. § 5325(b).

9. Additionally, Title 31, United States Code, Section 5313(a) and its related regulations state that when a domestic financial institution is involved in a transaction

for the payment, receipt, or transfer of U.S. currency in an amount greater than $10,000, the institution shall file a currency transaction report ("CTR") for each cash transaction. 31 C.F.R. §§ 1010.311, et seq.

10. CTRs are filed with the Financial Crimes Enforcement Network on forms that require disclosure of, among other information, the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

11. These regulations also require that multiple transactions be treated as a single transaction if the financial institution has knowledge that they are conducted by, or on behalf of, the same person, and they result in currency either received or disbursed by the financial institution totaling more than $10,000 during any single business day.

12. Many individuals involved in illegal activities, such as narcotics trafficking, tax evasion and money laundering, are aware of the reporting requirements and take active steps to cause financial institutions to fail to file CTRs, or fail to require identifying information when issuing money orders. These active steps, whether to evade the $10,000 reporting requirement for cash transactions or the $3,000 requirement to provide identification when purchasing money orders, are often referred to as "structuring." Structuring is prohibited by 31 U.S.C. § 5324(a).

13. Pursuant to 31 U.S.C. § 5317, any property involved in violations of 31 U.S.C. §§ 5324 or 5313, or any conspiracy to commit any such violations, and any property traceable to any such violations or conspiracy, is subject to forfeiture.

## FACTS

14. On May 13, 2020, members of law enforcement at JFK approached Sheng as he was about to board a flight to Seattle, Washington, with a layover in Salt Lake City, Utah. Sheng, who has a history of narcotics offenses, had purchased his one-way airline ticket within a day or two of his scheduled flight.

15. During the encounter, Sheng consented to the search of his carry-on luggage, consisting of a backpack and hard shell luggage. Upon searching the backpack, law enforcement found a laundry bag with numerous bundles of cash (i.e., the Defendant Cash) wrapped in rubber bands. Upon searching the hard shell luggage, law enforcement discovered another large laundry bag with numerous bundles of cash (i.e., the Defendant Cash) also wrapped in rubber bands. Also found in the hard shell luggage were numerous blank money orders (i.e., the "Defendant Money Orders"), in amounts of $900 and $1,000.

16. When asked about the Defendant Cash and the Defendant Money Orders, Sheng, who appeared to be nervous, initially stated that he was carrying $100,000. Sheng then stated that the actual amount he was transporting was between $200,000 and $500,000. Next, Sheng stated that he did not know how much money he was carrying.

17. Sheng also stated that none of the Defendant Funds belonged to him. According to Sheng, the Defendant Cash was owned by one friend and the Defendant Money Orders were owned by another friend. Sheng stated that he was transporting the Defendant Cash and Defendant Money Orders for the two different friends so that each could purchase a property in the State of Washington. Sheng, however, could not provide an address for either property.

18. During his encounter with law enforcement, Sheng consented to a search of his phone. Law enforcement's search of Sheng's phone revealed several photographs and/or videos of marijuana, a ledger, and what appeared to be a marijuana grow house.

19. When asked why he had photographs and/or video of what appeared to be a marijuana grow house, Sheng stated that the photographs and/or video were sent to him by a friend.

20. Law enforcement seized the Defendant Funds. Upon advising Sheng of the seizure, Sheng indicated that he still planned to board his scheduled flight to Salt Lake City, Utah, which at that point in time had not yet begun to board. Later that day, law enforcement learned that, despite what Sheng indicated, he did not board the flight.

21. On the same day as the seizure, a trained narcotics detection K-9 positively alerted to the presence of narcotics on both the Defendant Cash and the Defendant Money Orders.

22. The Defendant Cash seized from Sheng, totaling $280,000, was in the following denominations: (a) 2,000 x $10 bills totaling $20,000; and (b) 13,000 x $20 bills totaling $260,000.

23. Narcotics dealers largely conduct their transactions in cash. Based upon the training and experience of law enforcement, the disproportionate number of $20 bills is indicative of cash proceeds of narcotics trafficking.

24. The forty-eight Defendant Money Orders were blank and in denominations of $900 or $1,000. Specifically, thirty-two of the Defendant Money Orders

were in the amount of $1,000, and sixteen were in the amount of $900. Based upon the training and experience of law enforcement, high-value blank money orders are also commonly used in narcotics trafficking, as they are easier to physically conceal than carrying large wads of cash.

25. A review of the Defendant Money Orders revealed that they were purchased at three different U.S. Post Offices located in Queens, New York on four different days within the same week, specifically: May 7, 8, 11, and 12, 2020.

26. The sequential numbers of the Defendant Money Orders show that they were purchased in sets of three (3), comprised of two (2) money orders in the amount of $1,000 and one (1) money order in the amount of $900, totaling $2,900. In addition, it appears that the individual sets of Defendant Money Orders were purchased from different clerks at the same U.S. Post Office on the same day, thereby allowing the purchaser(s) to avoid triggering the identification requirement for purchases of money orders exceeding $3,000, as set forth in 31 U.S.C. § 5325(a); 31 C.F.R. § 1010.415. Under that regulation, the U.S. Postal Service requires that any customer whose daily total of purchased money orders is $3,000 or more, regardless of the number of visits the customer makes to one or more postal facilities, must complete PS Form 8105-A, Funds Transaction Report (FTR), and show an acceptable primary form of identification. See Mailing Standards of the United States Postal Service, Domestic Mail Manual, 3.2.2 Purchase Restrictions.

27. Further, as the Defendant Money Orders, totaling $46,400, were purchased in the same week, and over the course of four days, by purchasing multiple money

orders in small amounts, the purchaser(s) evaded avoided triggering the currency reporting requirements set forth under 31 U.S.C. § 5313(a).

## FIRST CLAIM FOR RELIEF

28. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 above as if fully set forth herein.

29. The Defendant Funds constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the CSA, proceeds traceable to such an exchange, and/or moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of the CSA.

30. As a result of the foregoing, the Defendant Funds are liable to condemnation and forfeiture to the United States in accordance with the provisions of 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

31. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 above as if fully set forth herein.

32. The Defendant Funds constitute property that is involved in, and/or is traceable to, transactions or attempted transactions designed in whole or in part to conceal or disguise the source, ownership, or control of the proceeds of specified unlawful, in violation of 18 U.S.C. § 1956(a)(1)(B)(1).

33. As a result of the foregoing, the Defendant Funds are liable to condemnation and forfeiture to the United States in accordance with the provisions of 18 U.S.C. § 981(a)(1)(A).

### THIRD CLAIM FOR RELIEF

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 above as if fully set forth herein.

35. The Defendant Money Orders were involved in violations of, or attempts to violate, 31 U.S.C. § 5324, or are property traceable to such property.

36. As a result of the foregoing, the Defendant Money Orders are liable to condemnation and forfeiture to the United States in accordance with 31 U.S.C. § 5317(c).

WHEREFORE, plaintiff, United States of America, requests that a Warrant of this Court issue for the arrest of the Defendant Funds; that due notice of these proceedings be given to all interested persons; that the Defendant Funds be forfeited and condemned to the

use and benefit of the United States of America; and that plaintiff be awarded its costs and disbursements in this action, and for other and further relief as this Court deems just and proper.

Dated:      Brooklyn, New York
            September 18, 2020

                                        SETH D. DUCHARME
                                        Acting United States Attorney
                                        Eastern District of New York
                                        *Attorney for Plaintiff*
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

                            By:    *Laura Mantell*
                                        Laura D. Mantell
                                        Assistant U.S. Attorney
                                        (718) 254-6253

## VERIFICATION

1. I am a Special Agent for the Drug Enforcement Administration, based at John F. Kennedy International Airport, in Jamaica, New York.

2. I have read the Verified Complaint in rem in this action.

3. The matters contained in the within Verified Complaint in rem are true and accurate to the best of my knowledge, information and belief.

4. The source of my information and the grounds for my belief are my personal knowledge, information provided by other law enforcement officers and the official files and records of the DEA.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:   Brooklyn, New York
         September 18, 2020

_____
Daniel Robles
Special Agent
Drug Enforcement Administration
Department of Justice