UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
**UNITED STATES OF AMERICA,**　　　　　　　　　:

　　　　　　　　　　Plaintiff,　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　　　　　:　**MEMORANDUM**
　　　　　　　　　- against -　　　　　　　　　　　　　**DECISION AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　　:　20-CV-4442 (AMD)

**TWO HUNDRED AND EIGHTY THOUSAND**　　:
**DOLLARS AND ZERO CENTS ($280,000.00),**
**MORE OR LESS, IN UNITED STATES**
**CURRENCY, AND MONEY ORDERS IN THE**
**AMOUNT OF FORTY-SIX THOUSAND FOUR**
**HUNDRED DOLLARS AND ZERO CENTS**
**($46,400.00), MORE OR LESS,** *Seized from*
*Liyuan Sheng at John F. Kennedy Airport on or*
*about May 13, 2020, and All Proceeds Traceable*
*Thereto*,

　　　　　　　　　　Defendants.
---------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge.

On September 21, 2020, the United States of America commenced this civil forfeiture action *in rem* pursuant to 21 U.S.C. § 881(a)(6), 18 U.S.C. § 981(a)(1)(A), and 31 U.S.C. § 5317, alleging that approximately $326,400 of seized funds (the "Defendant Funds") were forfeited and condemned to the use and benefit of the United States of America. (ECF No. 1 at ¶¶ 1-2.) The Defendant Funds are comprised of $280,000 in U.S. currency (the "Defendant Cash") and $46,400 worth of money orders (the "Defendant Money Orders"). (*Id.* at ¶ 1.) Although notice of this action was provided (*see* ECF Nos. 4, 6), no claimant has asserted an interest in the Defendant Funds by filing a claim in this Court in accordance with Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). The Government now moves for entry of a default judgment pursuant to

1

Rule 55(b)(2) of the Federal Rules of Civil Procedure. For the following reasons, the Government's motion is granted.

## BACKGROUND

I. **Factual Background**[1]

On May 13, 2020, Liyuan Sheng was approached by members of law enforcement at John F. Kennedy International Airport as he was about to board a flight to Seattle, Washington. (ECF No. 1 at ¶ 14.) Sheng, who has a history of narcotics offenses, consented to a search of his carry-on luggage. (*Id.* at ¶¶ 14-15.) During the search, law enforcement found two laundry bags with bundles of cash held together by rubber bands (*i.e.*, Defendant Cash), and also numerous blank money orders (*i.e.*, Defendant Money Orders). (*Id.* at ¶ 15.) When questioned about the funds, Sheng "appeared to be nervous," and could not say how much money he was carrying.[2] (*Id.* at ¶ 16.) He also said that the money was not his,[3] and that he was transporting it for two friends who planned to buy property in Washington; he could not, however, provide the address for either property. (*Id.* at ¶ 17.) Sheng also consented to a search of his phone, which contained "photographs and/or videos of marijuana, a ledger, and what appeared to be a marijuana grow house;" he claimed "a friend" sent him the pictures of the "marijuana grow house." (*Id.* at ¶¶ 18-19.) Law enforcement subsequently seized the Defendant Funds. (*Id.* at ¶ 20.) That same day, a trained narcotics dog detected the presence of narcotics on the Defendant Cash and the Defendant Money Orders. (*Id.* at ¶ 21.)

---

[1] The facts are derived from the uncontested allegations in the Government's complaint, and are taken as true for the purpose of deciding this motion. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997) (deeming well-pleaded allegations in complaint admitted on motion for a default judgment).

[2] First, Sheng said that he was carrying $100,000. Next, he claimed that he had between $200,000 and $500,000. Finally, he said that he did not know how much money he was carrying. (*Id.* at ¶ 16.)

[3] Specifically, Sheng stated that "the Defendant Cash was owned by one friend and the Defendant Money Orders were owned by another friend." (*Id.* at ¶ 17.)

The Defendant Cash totaled $280,000 and consisted of 2,000 ten-dollar bills and 13,000 twenty-dollar bills. (*Id.* at ¶ 22.) The government alleges that "[b]ased upon the training and experience of law enforcement, the disproportionate number of $20 bills is indicative of cash proceeds of narcotics trafficking." (*Id.* at ¶ 23.) The Defendant Money Orders consisted of 48 blank money orders in denominations of $900 and $1,000: 32 in the amount of $1,000, and 16 in the amount of $900. (*Id.* at ¶ 24.) According to the government, "high-value blank money orders are also commonly used in narcotics trafficking, as they are easier to physically conceal than carrying large wads of cash." (*Id.*) The evidence reflected that the money orders were purchased in sets of three for a total of $2,900; in addition, the purchases were made from different U.S. Post Office clerks in a manner that avoided the identification requirements for purchases of money orders over $3,000. (*Id.* at ¶ 26.) Finally, the purchases were spread across four different days in the same week; by making multiple purchases of money orders in small amounts, the purchaser avoided the currency reporting requirements. (*Id.* at ¶ 27.)

## II. Procedural History

On September 21, 2020, the United States commenced this civil forfeiture action *in rem* by filing a Verified Complaint. (ECF No. 1.) On September 23, 2020, I issued a seizure warrant for the Defendant Funds. (ECF No. 3.) The Government has established notice to known potential claimants in this action. On or about September 30, 2020, the Government sent notice of this action, including a copy of the complaint and the warrant, to Eric A. Pack, Esq., who previously filed a claim on behalf of Sheng in the preceding administrative forfeiture proceedings against the Defendant Funds.[4] (ECF No. 7-1 at ¶ 5.) The Government served direct

---

[4] Mr. Pack acknowledged service and advised that it was unlikely that Sheng would file a claim to contest the forfeiture. (ECF No. 7-1 at ¶ 5.)

3

notice of forfeiture to Sheng on or about October 6, 2020, by sending him a copy of the complaint and warrant by overnight mail, in accordance with Supplemental Rule G(4)(b)(i). (*Id.* at ¶ 6; *see* ECF No. 4.) The Government has likewise accomplished notice by publication by publishing notice of this action on www.forfeiture.gov, an official government site, for at least 30 consecutive days from January 6, 2021 to February 4, 2021, in accordance with Rule G(4)(a)(iv)(C). (ECF No. 7-1 at ¶ 7; *see* ECF No. 6.) The Government represents that all potential parties have been properly served. (ECF No. 7-1 at ¶ 9.) To date, no potential claimant has asserted an interest in the Defendant Funds or answered the complaint pursuant to Rule G(5). (ECF No. 7-1 at ¶ 8.) The Government requested a certificate of default on April 6, 2021 (ECF No. 7), and the Clerk of Court noted entry of default against the Defendant Funds on April 21, 2021 (ECF No. 9). The Government filed this motion for a default judgment on April 28, 2021. (ECF No. 10.)

## DISCUSSION

### I. Standard of Review

Rule 55 of the Federal Rules of Civil Procedure sets out a two-step process for entry of a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to move to set aside the default under Rule 55(c), the Court may enter a default judgment on a plaintiff's motion. Fed. R. Civ. P. 55(b)(2). Default judgments are "generally disfavored" because of the Second Circuit's "oft-stated preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). Accordingly, "just because a party is in default, the plaintiff is not

entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

A court considering a motion for default judgment "deems all the well-pleaded allegations in the pleadings to be admitted," *Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 108, but still has the "responsibility to ensure that the factual allegations [in the plaintiff's pleadings], accepted as true, provide a proper basis for liability and relief." *J & J Sports Prod., Inc. v. McAdam*, No. 14-CV-5461, 2015 WL 8483362, at *2 (E.D.N.Y. Dec. 9, 2015) (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010)). In other words, the Court considers "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *J & J Sports Prod., Inc.*, 2015 WL 8483362, at *2 (quoting *Rolls-Royce PLC*, 688 F. Supp. 2d at 153).

## II. Legal Framework

"*In rem* forfeiture actions are governed by Rule G of the [Supplemental] Rules and the Civil Asset Forfeiture Reform Act of 2000 ('CAFRA'), Pub. L. No. 106–185,114 Stat. 202." *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014) (footnote omitted); *see also* 18 U.S.C. § 981(b)(2); 21 U.S.C. § 881(b); Supplemental Rule G(1). Civil forfeiture claims are also governed generally by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *Vazquez-Alvarez*, 760 F.3d at 197 n.3; *see* Supplemental Rule A(1)(B). Further, the Federal Rules of Civil Procedure apply to *in rem* forfeiture actions, to the extent they do not conflict with the Supplemental Rules. Supplemental Rule A(2); *United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-CV-5567, 2015 WL 5178121, at *4 (E.D.N.Y. Sept. 2, 2015), *aff'd sub*

*nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17 (2d Cir. 2017).

Supplemental Rule G(4) sets forth the notice requirements for *in rem* forfeiture actions arising from a federal statute. Notice by publication, which is required unless certain conditions are met, can be accomplished by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days." Supplemental Rule G(4)(a)(iv)(C). Moreover, the Government "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government." Supplemental Rule G(4)(b)(i).[5] Once the Government has commenced a forfeiture action, a person asserting an interest in a defendant *in rem* may challenge the forfeiture by filing a claim in the court where the civil action is pending. Supplemental Rule G(5)(a). The claimant must file an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure within 21 days after filing the claim. Supplemental Rule G(5)(b).

Under CAFRA, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). Accordingly, the Government must demonstrate that there is a substantial connection between the Defendant Funds and the offenses that underlie the Government's theories of forfeiture.

---

[5] As discussed above, the Government has established notice by publication and direct notice to Sheng pursuant to Supplemental Rules G(4)(a)(iv)(C) and G(4)(b)(i).

### III. The Government's Right to Forfeiture

#### a. Forfeiture Pursuant to 21 U.S.C. § 881(a)(6)

The Government asserts that the Defendant Funds "constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the [Controlled Substances Act], proceeds traceable to such an exchange, and/or moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of the CSA," and, as a result, are subject to condemnation and forfeiture pursuant to 21 U.S.C. § 881(a)(6). (ECF No. 1 at ¶ 29.) Since the Government seeks forfeiture pursuant to 21 U.S.C. § 881(a)(6) on a theory that the Defendant Funds constitute proceeds traceable to an exchange for drugs, "it must demonstrate that those proceeds have a substantial connection to drug trafficking." *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 250 (S.D.N.Y. 2010) (citation omitted). The Government "need not prove that there is a substantial connection between the property and any specific drug transaction," but it must at least "prove more generally, based on a totality of the circumstances, that the property is substantially connected to narcotics trafficking." *United States v. U.S. Currency in the Sum of One Hundred Eighty-Five Thousand Dollars ($185,000)*, 455 F. Supp. 2d 145, 149 (E.D.N.Y. 2006) (citation omitted).

The Government has sufficiently pled a substantial connection between the Defendant Funds and drug trafficking. The amount at issue—$280,000 in U.S. currency and $46,400 in money orders—is an unusually large sum of money to carry. *United States v. $32,507.00 in U.S. Currency*, No. 14-CV-5118, 2014 WL 4626005, at *2 (S.D.N.Y. Sept. 16, 2014) ("Carrying large sums of cash is not *per se* evidence of drug-related illegal activity, but it is suggestive of involvement in illegal activity more generally.") (citations and quotation marks omitted).

Moreover, the Defendant Cash was arranged in bundles of smaller bills wrapped in rubber bands, which are characteristics "common when transporting drug money, and courts have relied on them as evidence of a connection to the drug trade." *Id*. (collecting cases). The amounts of the Defendant Money Orders—48 blank money orders in denominations of $1,000 and under—are also characteristic of criminal activity. *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 87 (2d Cir. 2002) (recognizing that a person carrying a large number of blank money orders of small denominations, $1,000 and under, could raise suspicions of criminal activity).

In addition to the amounts and denominations, the Government alleged other substantial connections between the Defendant Funds and drug trafficking: the evidence of narcotics on both the Defendant Cash and Defendant Money Orders; Sheng's history of narcotics offenses; the images on Sheng's phone of marijuana, a ledger and a "marijuana grow house;" and Sheng's inability to specify how much money he was carrying. These facts are sufficient to connect the Defendant Funds to drug activity. *See $32,507.00 in U.S. Currency*, 2014 WL 4626005, at *2-3 (the seizure of $32,507 from a car trunk, the packaging of the cash in bundles of small bills, the detection of narcotics by a drug-sniffing dog, and the parties' shifting explanations for the currency "raise a reasonable inference of a drug connection"); *United States v. U.S. Currency in Amount of Two Hundred Forty-Eight Thousand Four Hundred Thirty Dollars*, No. 01-CV-5036, 2004 WL 958010, at *4 (E.D.N.Y. Apr. 14, 2004) (finding that "a claimant's narcotics conviction" is a "factor" in establishing a connection between the funds and drug activity); *see also United States v. Two Hundred Seventy-Two Thousand Dollars & No Cents ($272,000)*, No. 16-CV-6564, 2018 WL 948752, at *6 (E.D.N.Y. Feb. 16, 2018).

Accordingly, the allegations in the Government's complaint are sufficient to establish a substantial connection between the Defendant Funds and drug activity. Since no interested party has filed a claim to dispute the Government's allegations, I take them as true for the purposes of deciding this motion for a default judgment. Accordingly, I find that the Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).[6]

## CONCLUSION

I grant the Government's motion for a default judgment (ECF No. 10) and issue the proposed Default Judgment and Decree of Forfeiture and Order for Delivery (ECF No. 10-2) against the Defendant Funds, approximately $280,000 in U.S. Currency and money orders in the amount of approximately $46,400. The Government is hereby ordered to serve a copy of this Order on Liyuan Sheng at his last known address, and file proof of service with the Court.

**SO ORDERED.**

                                                           s/Ann M. Donnelly
                                                    ANN M. DONNELLY
                                                    United States District Judge

Dated: Brooklyn, New York
        July 14, 2021

---

[6] Because the Government has shown that the Defendant Funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), I need not address whether the Defendant Funds are also subject to forfeiture pursuant to the Government's remaining theories.